```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 U.S. SPECIALTY INSURANCE CO.,

                     Plaintiff,               MEMORANDUM & ORDER
                                              20-cv-4133(EK)(PK)

          -against-

 HUDSON EXCESS INSURANCE CO.,

                     Defendant.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

Plaintiff U.S. Specialty Insurance Co. ("USSIC") filed this action in September 2020, seeking a declaration that another insurance company — the defendant, Hudson Excess Insurance Co. ("Hudson") — has a duty to defend and indemnify certain parties in a state-court action. In the state case, *Nunez v. 672 Parkside, LLC et al.* (N.Y. Sup. Ct. Index No. 524820-2018), an injured construction worker is suing the owner of a Brooklyn building and its general contractor. To date, USSIC has been paying the defendants' litigation costs in the *Nunez* case.

USSIC now moves for partial summary judgment on Hudson's duty to defend (but not its duty to indemnify). Specifically, USSIC seeks an order "(i) declaring that Hudson has a duty to defend" certain parties in the *Nunez* case and "(ii) declaring that Hudson must reimburse USSIC for the costs

incurred" to date by USSIC for those same parties' defense. Pl. Mem. in Support of Summ. J. ("Pl. Br.") 10, ECF No. 29; *see also* Pl. Mot. for Summ. J., ECF No. 25.

For the reasons set forth below, Plaintiff's motion for partial summary judgment is GRANTED.

## I. Background[1]

### A. Underlying Action

This insurance dispute arises from an accident at a construction project at 672 Parkside Avenue in Brooklyn (the "Project"). Gustavo Nunez, a construction worker on the Project, alleges (in state court) that he was injured when he tripped over debris on the first floor of the site in March 2018. The general contractor on the Project was Townhouse Builders, which does business under the name Promont ("Promont"); Promont engaged a subcontractor named CML Taping and Painting, which did business as CML Construction ("CML"). The details of the subcontract are discussed further below.

After he was injured, Nunez filed the negligence action against Promont and the owner of the building site (the

---

[1] The facts in this order are drawn from the parties' submissions in connection with the motion for partial summary judgment, including Plaintiff's Local Rule 56.1 Statement ("Pl. 56.1" (ECF No. 28)) and Defendants' opposition to this statement ("Def. Opp. to Pl. 56.1" (ECF No. 31)). The Court views the facts in the light most favorable to Defendant, the non-moving party. Citations to a party's Rule 56.1 Statement incorporate by reference the documents cited therein. For convenience, the Court refers to Plaintiff's supporting memorandum of law as "Pl. Br." (ECF No. 29) and Defendant's opposition submission as "Def. Opp." (ECF No. 33).

2

"Owner") in Kings County Supreme Court. Pl. 56.1 ¶¶ 8-9; Def. 56.1 ¶¶ 8-9. Nunez also filed a claim with the New York State Workers' Compensation Board ("WC Board"). Before the WC Board, Promont and CML disputed which one of them employed Nunez (as they do here). After a hearing in May 2019, the WC Board concluded that Nunez was employed by CML – not Promont — at the time of the accident. WC Board Order 2, ECF No. 26-2. The WC Board thus discharged Promont from the workers' compensation claim and directed CML to compensate Nunez for his injuries. *Id.*

In the Supreme Court action, Promont and the Owner filed a third-party complaint against CML, asserting claims for contractual indemnification, common-law indemnification and contribution, and breach of contract. Pl. 56.1 ¶ 12; Def. 56.1 ¶ 12. Nunez added CML as a defendant to the negligence action in March 2020 but then dismissed CML a few months later, after CML contacted Nunez's counsel and requested that Nunez withdraw his claims in light of the WC Board's decision requiring CML to pay the workers' compensation award. Pl. 56.1 ¶¶ 16-18; Def. 56.1 ¶¶ 16-18. As a result, CML remains in the state case only as a third-party defendant.

B.  **The Insurance Contracts**

At the time of Nunez's injury, Promont (the general contractor) was insured by USSIC. Promont's subcontract with

CML (the subcontractor) required CML to purchase commercial general liability insurance and to include Promont and the Owner as additional insureds, Pl. 56.1 ¶ 21 — that is, to procure coverage for Promont and the Owner. *See* Subcontract 4, ECF No. 1-3 ("Subcontract"). CML obtained this insurance from Hudson. *See* Hudson Policy, ECF No. 26-9 ("Hudson Policy"). The policy that Hudson issued to CML (the "Hudson Policy") did not refer to Promont and the Owner by name, but (the parties agree) did define "additional insureds" in a way that covered them.[2]

The Hudson Policy went on to define the scope of coverage running to the additional insureds to include liabilities arising from "bodily injury" that was:

1. "caused, in whole or in part, by"
2. the "acts or omissions" of CML, or those "acting on [its] behalf,"
3. *if* those acts or omissions occurred "in the performance of [CML's] ongoing operations for the additional insured."

Hudson Policy 34. The parties dispute whether Nunez's injuries satisfy these requirements.

The policy that USSIC wrote to Promont (the "USSIC Policy"), for its part, contained provisions limiting USSIC's

---

[2] As relevant here, the Hudson Policy conferred "automatic status" on parties who CML was "required to add as an to add as an additional insured under the contract or agreement." Hudson Policy 34.

4

obligation to "excess" coverage, in the event that other primary insurance was available: Section IV.4 stated that "if other valid and collectible insurance is available to the insured" for certain covered losses, then the USSIC policy would be for the "excess over" any "other primary insurance available to [Promont] covering liability for damages arising out of the premises or operations, or the products and completed operations," for which Promont has "been added as an additional insured by attachment of endorsement." USSIC Policy 35, ECF No. 1-5 ("USSIC Policy").

C. **Hudson's Denial of Defense**

Since Nunez filed his lawsuit, USSIC has twice tendered requests for the defense and indemnity of Promont and the Owner to Hudson and CML. Pl. 56.1 ¶¶ 29-30; Def. 56.1 ¶¶ 29-30. Hudson rejected these requests on the basis that CML did not employ Nunez, despite the WC Board Order finding that it did. In an April 2020 letter, for example, Hudson wrote that it had "not been established that the injured claimant Nunez was an employee of CML" at the time of the alleged accident. Ltr. from Hudson dated Apr. 21, 2020, ECF No. 26-12; *see also* Pl. 56.1 ¶ 31. USSIC continues to defend Promont and the Owner in the

5

underlying state-court action; as of May 2021, it had incurred over $20,000 in defense costs.  Pl. 56.1 ¶ 32.

## II. Legal Standards

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  "A fact is material for these purposes if it might affect the outcome of the suit under the governing law. An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001).[3]

The moving party has the burden of demonstrating the absence of a dispute of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  If the movant carries its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  If the non-moving party fails to do so, the Court should grant summary judgment.  The entry of summary judgment is appropriate "against

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

6

a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In performing this analysis, the Court must resolve all ambiguities and draw all inferences in favor of Plaintiff, the non-moving party. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).

### III. Discussion

USSIC seeks partial summary judgment on two issues: whether Hudson has a duty to defend Promont and the Owner in the underlying action; and, if so, whether Hudson must reimburse USSIC for the defense costs it has incurred to date.  (This latter question, put differently, asks whether Hudson is obligated to provide primary – as opposed to excess – coverage.) I conclude that the answer to both questions is yes.

**A.   Hudson's Duty to Defend**

Under New York law, courts "determining a dispute over insurance coverage . . . first look to the language of the policy.  We construe the policy in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect." *Raymond Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 800 N.Y.S.2d 89, 92 (N.Y. 2005).

Whether an insurer has a duty to defend a claim against its insured is determined "by comparing the allegations of [the] complaint with the wording of the insurance contract" — here, the Hudson Policy.  *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004).  Importantly, "the standard for determining whether an additional named insured is entitled to a defense is the same standard that is used to determine if a named insured is entitled to a defense." *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 840 N.Y.S.2d 302, 306 (N.Y. 2007).[4]

"In New York, an insurer's duty to defend is exceedingly broad. . . ."  *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014).  As the Second Circuit has explained,

> [T]he New York cases establish that so long as the claims asserted against the insured may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend.  In other words, a separate, contractual duty to defend exists, and perdures until it is determined with certainty that the policy does not provide coverage.

---

[4] *See also Pecker Iron Works of N.Y., Inc. v. Traveler's Ins. Co.*, 756 N.Y.S.2d 822, 823 (2003) ("'Additional insured' is a recognized term in insurance contracts . . . As cases have recognized, the well-understood meaning of the term is an entity enjoying the same protection as the named insured.").

8

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001). Accordingly, "[a]n insurer will be called upon to provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage." *Euchner-USA*, 754 F.3d at 141. That said, "[t]he insurer's duty to defend is . . . not an interminable one, and will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy." *Sturges Mfg. Co. v. Utica Mut. Ins. Co.*, 332 N.E.2d 319, 323 (N.Y. 1975); *see also Kinsale Ins. Co. v. OBMP NY, LLC*, 171 F. Supp. 3d 277, 281 (S.D.N.Y. 2016) (the duty to defend "is limited absolutely by the scope of the coverage purchased by the insured").

    1. USSIC Has Demonstrated a "Reasonable Possibility" of <u>Coverage</u>

Applying this standard, Hudson is obligated to defend Promont and the Owner because the record, even viewed in the light most favorable to Hudson, suggests at least a "reasonable possibility of coverage" under the Hudson Policy. *See Euchner-USA*, 754 F.3d at 140.

***It is undisputed that Promont and the Owner are additional insureds under the Hudson Policy.*** Hudson does not dispute that Promont and the Owner are "additional insureds" under the Hudson Policy, which provides that "when . . . [a] written construction agreement" requires that an entity be named

9

as an "additional insured," that status is automatic. Hudson Policy 34. Here, the Subcontract (*i.e.*, the written construction agreement) expressly required that "the Owner and Contractor [Promont] . . . be named as additional insured" in CML's policy. Subcontract 4.

***The scope of Hudson's coverage to additional insureds subsumes liability for Nunez's injury.*** There is also a reasonable possibility that CML's liability for Nunez's injury would fall within the scope of coverage for "additional insureds" — including Promont and the Owner — under the Hudson Policy. Nunez alleges, in the state-court action, that he was injured when he "tripped and fell on debris/construction material" while working at the Project on March 16, 2018. Nunez Compl. ¶ 89, ECF No. 1-1. He alleges that CML was a "project manager" and contractor for "work, labor, and services," and that CML "was to provide site safety management of the . . . premises." *Id.* ¶ 86. He claims his injury was the "result of the careless and negligent manner in which Defendants owned, maintained, controlled, and performed construction work and inspection" at the site, including "knowingly . . . allowing the . . . premises to be, become and remain in a defective, unsafe and dangerous condition." *Id.* ¶¶ 85-86.

These allegations suggest more than a reasonable possibility that Nunez's injuries were caused, at least in part,

10

in the course of CML's "ongoing operations" under the Subcontract.  *See* Hudson Policy 34.  CML's "ongoing operations for the additional insured" — Promont — were, in turn, specified by the subcontract between Promont and CML.  *Id.*[5]  The Subcontract's "scope of work" covered: "demolition of interior 4th floor roofing material"; "complete framing as per plan"; "complete installation of sheetrock as per plan"; "complete installation of dens glass as per plan"; "complete application of compound as per plan"; and "installation of doors as per plan."  Subcontract 1.  The record shows the day of Nunez's injury, CML's work for Promont consisted of "labor done on 1st floor" – specifically, "cleaning."  Invoice, Pl. Ex. 8, ECF No. 26-8 ("Invoice").  This is consistent with Nunez's testimony that his work at the Project consisted primarily of "cleaning" up "construction garbage" and debris on the first floor, or bringing that debris down from the other floors.  Pl. Reply Ex. A, Nunez Dep. 21:3-23:10, ECF No. 35-1.  These facts give rise to a reasonable possibility (if not more) that the debris that is alleged to have caused Nunez's injuries was created in the course of CML's "ongoing operations" at the project.

---

[5] The Hudson Policy defines the coverage available to additional insureds based on the named insured's "ongoing operations" by reference to the written agreement or contract (i.e., the Subcontract here): the coverage "[w]ill not be broader than that which [CML is] required by the contract or agreement to provide for such additional insured."  Hudson Policy 34.

11

Read alongside the Policy and Subcontract, Nunez's allegation – that he was injured when tripping on debris at the Project – suggests the possibility (at least) that his injury was causally connected to CML's ongoing operations for Promont. The New York Court of Appeals has held that the language "caused, in whole or in part" in an additional insured endorsement requires the named insured to be a proximate cause of the injury giving rise to liability, not the "but for" cause. *Burlington Ins. Co. v. NYC Transit Authority*, 57 N.Y.S.3d 85, 89-90 (N.Y. 2017). District courts in this circuit have interpreted this to mean that the language "caused, in whole or in part" triggers "additional insured" coverage "where the named insured is more than 0% liable for the underlying plaintiff's injuries." *Starr Indem. & Liab. Co. v. Excelsior Ins. Co.*, 516 F. Supp. 3d 337, 349 (S.D.N.Y. 2021). Here, Hudson has not established there is *no* possibility that CML will be held liable under this standard of causation.

2.  Hudson's Defenses

Hudson contends that its policy does not cover Nunez's injuries for two reasons: *first*, because Nunez was injured on the first floor of the Project, and CML's "ongoing operations" were limited to the fourth floor; and *second*, because Nunez was employed by Promont, not CML. Neither of these arguments undermines USSIC's right to declaratory relief it seeks.

12

***It is doubtful that CML's "operations" were restricted to the Project's fourth floor.*** Hudson mischaracterizes the factual record when it claims that CML's work was limited to demolition on the fourth floor. *See* Def. Opp. Def. Suppl. Ltr. 3, ECF No. 40. While the first item in the "scope of work" section of the Subcontract — "Complete demolition of interior 4th floor roofing material" — mentions the fourth floor specifically, none of the other types of work listed are similarly limited to any specific floor. *E.g.*, Subcontract 1 (other items include: "Complete framing as per plan"; Complete installation on sheetrock as per plan"; "Complete installation of doors as per plan"). Hudson, for its part, has not explained why those types of work could not have involved work on the first floor.

Moreover, even if CML's work was initially limited to work on the fourth floor, USSIC has pointed to evidence suggesting that this scope may have been expanded. The Subcontract contemplates this possibility, via change orders: "All additional work performed in additional apartments and/or floors will be considered change orders to the contract and be considered part of the scope herein." Subcontract 1. And CML's invoice to Promont for the day of Nunez's injury — which is designated a "change order" at the top of the document — specifies that it is for "labor done on 1st floor." Invoice.

13

The parties have not pointed to evidence that the change was submitted in writing and approved by Promont, as required by the Subcontract, *see* Subcontract 3, but there is also no evidence that it was not approved. The fact that the work was done, *see id.*, creates at least an inference that it was approved prior to being done. (Moreover, USSIC asserts — and Hudson does not dispute — that Promont paid CML for this work.)

**There is at least a substantial probability that CML employed Nunez when he was injured.** Hudson also argues that the accident was not caused by CML's "ongoing operations" because Nunez was actually employed by Promont. In support of this argument, Hudson points to Nunez's deposition testimony that Promont paid him. *See* Def. 56.1 ¶ 13; Def. Ex. A, Nunez Dep. 17:11-12:2, ECF No. 34-1. USSIC responds by invoking the WC Board's decision concluding that Nunez was employed by CML at the time of the accident.

The language of the Hudson policy does not restrict coverage for bodily injury to CML's employees and agents. Instead, it restricts coverage to the additional insureds for injuries *caused, in whole or in part, by* the acts or omissions of CML or its agents, regardless of who employs the injured victim. Hudson Policy 34. Hudson may mean to say here that Nunez *caused* the conditions that led to his own injury himself, and it matters for that reason who employed him. But Hudson's

14

argument fails on its own terms there, for reasons stated above: the WC Board found, after hearing testimony from Promont's president and from Nunez, that Nunez was a CML employee.  WC Board Order 2.  And that conclusion finds additional support here from the invoice from CML to Promont that indicates that CML did work on the first floor — the floor where Nunez was injured — on the day of Nunez's injury.  *See* Invoice.

For these reasons, even if this factual dispute may (down the line) affects Hudson's obligation to indemnify, it does not bear on its duty to defend.  This conclusion finds support in *All State Interior Demolition Inc. v. Scottsdale Ins. Co.*, where the parties disputed who the underlying plaintiff was working for when he was injured.  *See* 168 A.D.3d 612 (App. Div. 1st Dept. 2019).  The Appellate Division concluded that, given the language of the policy, the injured worker's pleadings "implicate[d] [the named insured's] actions" and thus triggered Scottsdale's duty to defend.  *Id.*  The same is true here.

In sum, none of these factual disputes would "allow a court to eliminate the possibility that the insured's conduct falls within coverage of the policy."  *Int'l Bus. Machines Corp.*, 363 F.3d at 148.  Even viewed in the light most favorable to Hudson, the evidence here establishes at least a reasonable possibility of coverage.  Thus, Hudson is not relieved of its duty to defend.

***Time Limits on Defense Obligation.*** Hudson makes an alternative argument that, even if it has a duty to defend, that duty should extend only to the two months during which CML was a defendant in Nunez's claim – from the time Nunez filed his amended complaint (March 2020) to when he dismissed CML (May 2020). *See* Def. Opp. 12. Hudson argues that after Nunez dismissed CML in the underlying action, USSIC made "shot-gun" allegations against CML to add it as a third-party defendant. The shotgun phrase suggests Hudson's view that the allegations against CML in the underlying state action are frivolous, and that they were made only for the purpose of triggering Hudson's coverage. *Id.* at 15-16. This allegation of frivolity is undermined, however, by the WC Board's finding that CML employed Nunez on the relevant date. In any event, Hudson cites no legal support for this requested time limit on its obligations. Hudson's request to limit its duty to defend is denied.

**B.   Primary Versus Excess Coverage**

I also conclude that the Hudson Policy provides primary, as opposed to excess, coverage for Promont. Accordingly, Hudson is obligated to absorb the cost of Promont's defense from Dollar One — not merely once other coverage has been exhausted — and to reimburse USSIC for its costs incurred to date. I address the merits of USSIC's arguments although Hudson does not meaningfully dispute or address it.

16

Where — as here — "one insurance policy is primary and one insurance policy is excess based on the 'other insurance' clauses, the primary insurer has the primary duty to defend on behalf of its insureds and it generally has no entitlement to contribution of an excess insurer." *Liberty Mut. Ins. Corp. N.Y. Marine & Gen. Ins. Co.*, 505 F. Supp 3d 260, 276 (S.D.N.Y. 2020); *see also Zurich Am. Ins. Co. v. Harleysville Ins. Co.*, 194 F. Supp. 3d 253, 261 (S.D.N.Y. 2016) (same). Here, the Hudson Policy is primary and the USSIC Policy is excess. The Hudson Policy expressly states, in its other-insurance provision, that "[t]his insurance is primary," with the exception of limited situations that do not apply here. Hudson Policy 21. Another section, titled "Primary and Non-Contributing Insurance Where Required By Written Contract(s) Endorsement," confirms:

> *Where you are specifically required by a written contract to provide insurance that is primary and non-contributory* and the written contract so requiring is executed by you before any "occurrence" or offense, *this insurance will be primary* and the other insurance will not contribute with this insurance, but only if and to the extent required by that written contract.

Hudson Policy 57 (emphasis added). Hudson concedes that the Subcontract required that CML to provide primary coverage for the additional insureds. *See* Def. 56.1 ¶ 21 ("Admit"). The Hudson Policy is therefore primary. The USSIC Policy, on the other hand, expressly provides for excess coverage: "This

17

insurance is excess over . . . [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of endorsement." USSIC Policy 35; *see also* Pl. 56.1 ¶ 28.

Accordingly, because Hudson has a duty to defend in the underlying action and its coverage is primary, Hudson owes defense costs to USSIC.

### IV.  Conclusion

For the foregoing reasons, Plaintiff's motion for partial summary judgment, on the issue of Defendant's duty to defend, is GRANTED.[6]  Hudson has a duty to defend the Owner and Promont in the underlying action, *Nunez v. 672 Parkside, LLC et al.* (N.Y. Sup. Ct. Index No. 524820-2018), and Hudson must reimburse USSIC for the costs thus far incurred by USSIC in defending the Owner and Promont in that action.  This case shall proceed to trial on any remaining claims.  The parties' joint

---

[6] This order does not dispose of the issue of Hudson's duty to indemnify, which is not before the Court in this motion.

18

proposed pretrial order is due thirty days from entry of this order.

SO ORDERED.


 /s/ Eric Komitee  
ERIC KOMITEE  
United States District Judge

Dated:   September 30, 2022  
         Brooklyn, New York